UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20594-CIV-SCOLA
MAGISTRATE JUDGE P.A. WHITE

KORIE TRAVARO WASHINGTON

     Petitioner,

vs.                                    REPORT OF
                                 MAGISTRATE JUDGE
JULIE JONES, et al.,

     Respondents.
_____/

## I. INTRODUCTION

    This matter is before the court on petitioner's *pro se* petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. His habeas petition attacks the constitutionality of his judgment of conviction in Case No. F0116202, Eleventh Judicial Circuit of Florida, Miami-Dade County.

    This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts ("Rules Governing § 2254 Cases").

    The undersigned has reviewed the entire record, including the operative § 2254 petition. DE#1. As discussed below, the petition should be **DISMISSED** with prejudice.

1

## II. <u>BACKGROUND</u>

### A. <u>Trial and Direct Appeal</u>

The state filed an amended information charging petitioner with the following counts: (1) Count 1--attempted first-degree murder of a law enforcement officer; (2) Count 2--attempted first-degree murder of a law enforcement officer while discharging a firearm; (3) Count 3--aggravated assault on a law enforcement officer while possessing a firearm; (4) Count 4--aggravated assault on a law enforcement officer while possessing a firearm; (5) Count 5--armed possession of cocaine; (6) Count 6--armed possession of cannabis; (7) Count 7--using or displaying a firearm in the commission of a felony; and (8) Count 8--possession of a firearm as a convicted felon. DE#15-4 at 2. [1]The state contends, DE#14 at 2, and petitioner does not dispute, DE#19 at 2-3, that petitioner received a bifurcated trial on count 8. This case concerns only counts 1 through 7.

On November 17, 2003, a jury found petitioner guilty of counts 1, 2, 4, 5, 6, and 7. DE#16-12 at 169-70. The jury found petitioner not guilty of count 3. <u>Id.</u> at 170. On December 15, 2003, the trial court entered judgment and deferred sentencing to a later date. DE#15-5 at 2-3.

On January 9, 2004, the trial court sentenced petitioner to thirty years on count 1 (with a 20-year mandatory minimum sentence); fifteen years on count 2 (with a 3-year mandatory minimum sentence); ten years on count 4 (with a 3-year mandatory

---

[1] Unless otherwise noted, all page citations for docket entries refer to the page stamp number located at the top, right-hand corner of the page.

2

minimum sentence); five years on count 5; and one year on counts 6 and 7, with the sentence to be suspended as to count 7. The sentences were generally ordered to run consecutively, although the 1-year sentence on count 6 was ordered to run concurrently with the consecutive sentences. DE#15-6 at 2-8.

On January 21, 2004, petitioner filed a notice of appeal in the Third District Court of Appeals ("Third District"). DE#15-11 at 2. In February 2005, during the pendency of this appeal, petitioner moved in the trial court for a corrected sentence. DE#15-7 at 2. On May 4, 2005, the trial court entered an order correcting petitioner's sentence. DE#15-9 at 2. The minimum mandatory sentences imposed on counts 1, 2, and 4 were ordered to run concurrently with each other. The order is retroactively dated to January 9, 2004 (i.e., the date of his original sentencing).

On February 8, 2006, the Third District affirmed petitioner's conviction and sentence without comment. DE#15-14 at 2. Petitioner did not file a motion for a rehearing. DE#15-10 at 3. Furthermore, the state contends, DE#14 at 15, and petitioner does not dispute, DE#19 at 2-3, that he did not seek review in the Florida Supreme Court or the United States Supreme Court.

### B. **State Postconviction Motions**

On July 30, 2007, petitioner filed a motion for postconviction relief. DE#15-37 at 35.

On November 7, 2007, the trial court entered an order denying several of petitioner's claims. DE#15-40 at 2. The trial court also struck two claims with leave to amend in thirty days.

3

<u>Id.</u>

On December 30, 2007, petitioner filed an amended postconviction motion regarding these two claims. DE#15-41 at 2. In late May/early June 2008, the trial court entered an order denying these two claims. DE#15-42 at 2.

On January 14, 2009, petitioner filed a notice of appeal in the Third District. DE#15-45 at 2. On April 29, 2009, the Third District affirmed without comment. DE#15-47 at 2. The Third District denied petitioner's motion for rehearing, issuing its mandate on June 4, 2009. DE#15-50 at 2.

On October 13, 2009, in the Third District, petitioner filed a habeas corpus petition. DE#15-52 at 19. On November 12, 2009, the Third District denied the petition without comment. DE#15-54 at 2. On December 11, 2009, the Third District denied petitioner's motion for rehearing. DE#15-55 at 2.

On January 13, 2010, petitioner filed a second postconviction motion in the trial court. DE#15-56 at 7. On March 2, 2010, the trial court denied the motion. DE#15-59 at 2. Petitioner did not move for rehearing or appeal the order. <u>Compare</u> DE#14 at 21, <u>with</u> DE#19 at 2-3.

On March 17, 2010, petitioner filed a third postconviction motion. DE#15-60 at 11. On June 11, 2010, the trial court denied this motion, partly because it was untimely. DE#15-62 at 2. On August 31, 2010, the trial court denied petitioner's motion for rehearing. DE#15-65 at 2. Petitioner appealed and, on November 24, 2010, the Third District affirmed without comment. DE#15-70 at 2. The Third District also denied petitioner's motion for

4

rehearing, issuing its mandate on January 3, 2011. DE#15-73 at 2.

On November 12, 2013, petitioner filed a petition to invoke all writ jurisdiction in the Third District. DE#15-75 at 7. On December 9, 2013, the Third District denied this petition without comment. DE#15-76 at 2. Petitioner did not move for rehearing. Compare DE#14 at 21, with DE#19 at 2-3.

On October 15, 2015, petitioner filed a fourth postconviction motion, DE#15-77 at 2, whose contents will be discussed later on. On July 12, 2016, the trial court denied this motion, holding that the record refuted it. DE#15-80 at 2, 11-12. The trial court denied the motion for rehearing. Compare DE#14 at 21, with DE#19 at 2-3.

Meanwhile, on August 11, 2016, petitioner appealed. DE#15-84 at 2. The Third District affirmed without comment, issuing its mandate on December 12, 2016. DE#15-86 at 2; DE#15-87 at 2. Petitioner did not move for rehearing. DE#15-83 at 2.

## C. **Federal Habeas Petition**

Petitioner filed the instant § 2254 petition on February 13, 2017. DE#1 at 1. The state's response and supporting documents are located at DE##14-16. Petitioner replied. DE#19.

## III. **DISCUSSION**

### A. **28 U.S.C. § 2244(d)(1)(A) and Statutory Tolling**

AEDPA imposes a one-year statute of limitations on the filing of federal habeas petitions. 28 U.S.C. § 2244(d)(1).

Pertinently, the year commences on "the date on which the judgment became final by . . . the expiration of the time for seeking such review." Id. § 2244(d)(1)(A). Under this clause, "the judgment becomes final . . . when the time for pursuing direct review in [the Supreme] Court, or in state court, expires." Gonzalez v. Thaler, 565 U.S. 134, 150 (2012). "[A] petition for a writ of certiorari to review a judgment in any case . . . entered by a state court of last resort . . . is timely when it is filed with the [U.S. Supreme Court] within 90 days after entry of the judgment." U.S. Sup. Ct. R. 13(1).

Here, as recounted above, the Third District affirmed petitioner's conviction on February 8, 2006. Petitioner did not move for rehearing or seek review in the Florida Supreme Court or the United States Supreme Court. Thus, his judgment on conviction became final under § 2244(d)(1)(A) on May 9, 2006. See Gonzalez, 565 U.S. at 150; Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006) (per curiam).

Petitioner did not file the instant petition until February 13, 2017. Therefore, as an initial matter, it would appear to be untimely absent statutory tolling.

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [§ 2244(d)]." 28 U.S.C. § 2244(d)(2); see also Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005). "[A]n application remains pending until it 'has achieved final resolution through the State's post-conviction procedures.'" Hernandez-Alberto v. Sec'y, Fla. Dep't of Corr., 840 F.3d 1360, 1364 (11th Cir. 2016) (per curiam) (quoting Carey

v. Saffold, 536 U.S. 214, 220 (2002)). This rule includes "those intervals between one state court's judgment and the filing of an appeal with a higher state court." Matos v. Sec'y, Fla. Dep't of Corr., 603 F. App'x 763, 766 (11th Cir. 2015) (per curiam) (citing Carey, 536 U.S. at 219–20). It also includes the 30-day window within which a Florida inmate can appeal an order denying a motion for postconviction relief, if the inmate does not appeal the order. See Cramer v. Sec'y, Dep't of Corrs., 461 F.3d 1380, 1384 (11th Cir. 2006) (per curiam); Hollinger v. Sec'y Dep't of Corr., 334 F. App'x 302, 304 (11th Cir. 2009).

Here, petitioner's judgment of conviction became final on May 9, 2006. As recounted above, he did not file his first postconviction motion until July 30, 2007. This results in **447 days** of untolled statutory time.[2]

Petitioner's first postconviction motion remained pending until June 4, 2009, the date on which the Third District issued its mandate. Then, on October 13, 2009, he filed his habeas petition in the Third District. This results in an additional **131 days** of untolled statutory time. This petition remained pending until December 11, 2009, whereupon the Third District denied petitioner's motion for rehearing.

On January 13, 2010, petitioner filed a second postconviction motion in the trial court. This results in an additional **33 days** of untolled statutory time. Petitioner did not

---

[2] As a doctrinal matter, petitioner's first postconviction motion could not have tolled § 2244(d)(1)(A)'s one-year period because said period had already expired when he filed it. Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (citing Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)). However, for illustrative purposes, the undersigned will tabulate all of the untolled statutory time between the date his conviction became final and the date he filed the instant petition.

appeal the trial court's March 2, 2010 denial of this motion. Thus, § 2244(d) stopped tolling thirty days later on April 1, 2010.

Meanwhile, petitioner filed his third postconviction motion. The trial court denied it as untimely and the Third District affirmed, issuing its mandate on January 3, 2011. Because the state courts rejected this motion as untimely, petitioner is not entitled to statutory tolling for this period. <u>Pace</u>, 544 U.S. at 417.

Then, on November 12, 2013, petitioner filed a petition in the Third District. This results in an additional **<u>1321 days</u>** of untolled statutory time. The Third District denied this petition on December 9, 2013, and petitioner did not move for a rehearing.

Subsequently, on October 15, 2015, petitioner filed a fourth postconviction motion. This results in an additional **<u>675 days</u>** of untolled statutory time. This motion remaining pending until December 12, 2016, when the Third District issued its mandate.

Finally, on February 13, 2017, petitioner filed the instant § 2254 petition. This results in an additional **<u>63 days</u>** of untolled statutory time.

In sum, petitioner has **<u>2670 days</u>** (over seven years and three months) of untolled statutory time. Thus, insofar as § 2244(d)(1)(A) applies, the instant petition is untimely.

## B. <u>28 U.S.C. § 2244(d)(1)(D) and Petitioner's Argument</u>

### 1. <u>Petitioner's Argument</u>

Petitioner acknowledges that his "state court judgment of conviction and sentences being challenged became final more than 1[]year ago[.]" DE#1 at 18. However, he contends that "this petition is being filed within one year from the date when the factual predicate for [his] Brady and Giglio claims 'could have been discovered through the exercise of due diligence.'" <u>Id.</u>

In support, he alleges that, before and during his trial, there was an agreement between the prosecution and prosecution witness Adrian Terry that "involved the state providing Terry assistance in obtaining a federal sentence reduction in return for providing testimony against [petitioner] at trial." <u>Id.</u> Further, he alleges that the prosecution knowingly presented and used Terry's false testimony "that [Terry] was not promised from the prosecutor any type of benefit for his cooperation." <u>Id.</u> Additionally, he contends that he did not discover these facts until "June 15, 2015, when [he] received a copy of a Rule 35 hearing transcript from the United States District in reference to state witness Adrian Terry." <u>Id.</u> Moreover, petitioner appears to contend that, including tolled statutory time, the instant § 2254 petition "was timely filed . . . within one[]year [of] June 15, 2015[.]" DE#19 at 8.[3]

---

[3] Petitioner's <u>Brady</u> and <u>Giglio</u> claims are based on the same core allegation, i.e., that the prosecutor had an undisclosed oral agreement with Terry for him to receive a sentence reduction in exchange for his testimony against petitioner.

2. <u>Terry's and Prosecutor's Relevant Testimony and Statements</u>

### a. **General Testimony**

Adrian Terry testified for the state at petitioner's trial. DE#16-8 at 23. Terry testified that:

- Terry was a federal inmate at the time of trial. <u>Id.</u> at 23-24.

- Terry went to petitioner's apartment to buy drugs on the day of the shooting between petitioner and the police. <u>Id.</u> at 34.

- Petitioner, who was the only person at the apartment, said that he was not feeling well. <u>Id.</u> at 49. Terry responded that petitioner should leave because there was a "bad vibe." <u>Id.</u> at 49-50. Petitioner did not take his advice and said that, if the police came, he was "going all out." <u>Id.</u> at 50.

- Terry appeared to testify that "going all out" meant: "Either you kill me or I kill you. I'm not letting you take something from me." <u>See</u> <u>id.</u> at 51.

- There were weapons in the apartment. <u>Id.</u>

### b. **Testimony and Statements Relevant to Petitioner's Claim**

At a hearing before trial, defense counsel noted that the prosecutor was going to call Terry as a witness. DE#16-1 at 5. Further, defense counsel stated that Terry's attorney (in the federal case for which he was serving a prison sentence) and the federal prosecutor could consider his cooperation in that case.

10

Id.

    The prosecutor responded that: (1) Terry was not receiving anything in exchange for testifying; (2) she did not contact Terry's lawyer or the AUSA in the federal case; and (3) there was nothing in Terry's contract that said that he had to help the state. Id. at 5-6. In a later hearing before trial, the prosecutor again stated that "Mr. Terry has no agreement with the State of Florida or any governmental agency in terms of his cooperation." DE#16-2 at 6.

    At trial, during direct examination, Terry testified that:

    - After pleading guilty, he received a 15-year federal sentence for conspiracy to sell cocaine. DE#16-8 at 24-25.

    - The United States debriefed him in connection with his plea agreement. Id. at 27.

    - He did not agree to testify against anyone pursuant to his plea agreement in federal court, and he did not in fact do so. Id.

    - To his knowledge, he was not "getting any sort of time taken off [his federal] sentence . . . for testifying in [petitioner's state] case[.]" Id. at 28.

    - He did not ask the state prosecutor if he could participate in the case to get time off his sentence. Id.

    - The state prosecutor told him that she could not promise him anything for assisting in the state's prosecution. Id.

11

- He was testifying to clear his conscience. <u>Id.</u>

- He had not been in touch with the lawyer who handled his federal case. <u>Id.</u> at 29.

- The state prosecutor first approached him and asked him if he had any information about petitioner's case. <u>Id.</u>

During cross-examination, defense counsel asked petitioner if his plea agreement in the federal prosecution created the possibility that the United States could file a Rule 35(b) motion for substantial assistance in the future. <u>Id.</u> at 56. Terry said yes and agreed with defense counsel's assertion that it was "up to the [United States] to file [] it[.]" <u>Id.</u> at 56-57. Terry also agreed with defense counsel's assertion that "testifying in [a trial for] attempted first-degree murder of a police officer[]" might induce the United States to file a Rule 35(b) motion on Terry's behalf. <u>Id.</u> at 57.

Later on during cross-examination, defense counsel asked Terry if he got a "big benefit in federal court via [a] Rule 35[.]" <u>Id.</u> at 63. Terry responded: "A benefit, but it was never guaranteed. I was told that I wasn't eligible." <u>Id.</u> Immediately thereafter, defense counsel leadingly asked Terry: "In fact, you can't even say that you are going to get a benefit in federal court, can you?" <u>Id.</u> Terry responded: "No, I can't say that I am." <u>Id.</u> Thereupon, defense counsel leadingly asked: "If you even mention that you think you are going to get a benefit in federal court, that benefit is going to disappear in federal court, isn't it?" Terry answered: "I would assume." <u>Id.</u>

12

On redirect examination, Terry testified that he would not turn down a chance to reduce his sentence. <u>Id.</u> at 64-65.

### 3. <u>Rule 35(b) Motion</u>

On September 20, 2004, a Rule 35 hearing was held in Case No. 02-20132-Cr-Moore-9. At the hearing, defense counsel stated that the information that Terry had provided in debriefings in the federal case came to the attention of the prosecutor in petitioner's state trial. Case No. 02-20132-Cr-Moore-9, DE#609 at 7. Further, defense counsel stated that the state prosecutor decided to "debrief him concerning the information he had on [petitioner] and the crime that he was charged with." <u>Id.</u> "It was from that," defense counsel continued, "that they decided to use [Terry] to testify in trial against [petitioner] and his particular crime in this particular trial." <u>Id.</u> Defense counsel also stated that "when an opportunity came to assist [the state's] law enforcement agencies, [Terry] was there and he gave 100 percent which resulted in a conviction." <u>Id.</u>

The AUSA stated that she "basically [] agree[d] with what [defense] counsel said." <u>Id.</u> at 8. The AUSA stated that Terry was one of the initial people who pleaded guilty in the federal case. "As a result of that," she continued, "a number of his codefendants came along and also pled." <u>Id.</u> Further, the AUSA stated:

> We forwarded [Terry's] information to the state authorities which, . . . led to a debriefing . . . and eventually Mr. Terry's cooperation with the state authorities and his testimony in the trial of [petitioner] and the eventual conviction of

[petitioner].

Id.

The district court granted the motion. Id. at 9. As a result, Terry's sentence was reduced from 188 months to 94 months. Id. at 5, 9.

### 4. Relevant Postconviction Motion

Petitioner filed his fourth postconviction motion on October 15, 2015. DE#15-77 at 2. There, as in the instant petition, he contended that the prosecution failed to disclose that Terry had an agreement "to cooperate and provide testimony against [petitioner] in return for a favorable sentence reduction in connection with [his] federal criminal prosecution." Id. at 6. Likewise, there, as here, petitioner contended that, at an unspecified time in 2014, he first learned that Terry benefitted from a Rule 35(b) motion. Id. at 8. Further, he contended that, he researched Terry's federal case and discovered that a Rule 35(b) motion was filed on Terry's behalf. Id. at 8-9. He added that, thereupon, he took steps to obtain a transcript of the Rule 35 hearing, which he received on or around May 16, 2015. Id. at 9.

Thus, petitioner contended that, at the time of his trial, he did not have, and could not have had, the evidence of Terry's alleged cooperation agreement with the prosecution. Id. at 8. Thus, petitioner contended that his claims (i.e., the same Giglio and Brady claims he asserts here) were timely. See id. 3, 11-26.

The trial court noted that, under Florida law, petitioner must show that: (1) he filed the motion within two years of the

14

time that he discovered the new facts, or could have discovered the new facts, with due diligence; and (2) the newly discovered evidence was of such a nature that it would probably produce an acquittal on retrial. DE#15-80 at 5. The trial court did not consider the first prong because it determined that petitioner failed to meet his burden under the second prong. Id. However, regarding the first prong, the trial court stated:

> The Court, nonetheless, has reservations as to whether [petitioner] could satisfy the first prong. . . . The evidence relied upon by [petitioner] is the resentencing transcript of a . . . Rule 35 hearing involving Terry. The hearing took place on September 20, 2004, and the transcript was available to the public on that date (or soon after). [Petitioner] could have employed the same methods in 2004 that he used to obtain the transcript nearly eleven years later in 2015. The record reflects, from Terry's trial testimony, that [petitioner] knew there was a possibility of a future Rule 35 hearing because Terry testified that he had entered into a plea agreement and was sentenced for a federal case which allowed for the possibility of a Rule 35 motion to reduce [his] sentence. . . . The fact that [petitioner] did not even [seek] to obtain a transcript of Terry's Rule 35 hearing until 2014, as alleged in [petitioner's] Motion, casts serious doubts that the transcript constitutes newly discovered evidence, as opposed to newly researched evidence. In fact, not only could this evidence have been discovered sooner, it was available at the time that [petitioner] filed his first [postconviction] motion dated July 30, 2007.

15

Id. at 5 n.3.

The Third District affirmed without comment. DE#15-86 at 2.

5. Discussion

Pertinently, § 2244(d) provides that its 1-year limitation period shall run from the latest of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Under this provision, "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, *not when the prisoner recognizes their legal significance*." Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157 (11th Cir. 2014) (citations omitted). "[D]ue diligence is equivalent to a rule of inquiry notice[.]" Id. at 1156 (citation omitted).

Here, petitioner failed to file his petition within one year of the date on which he could have discovered, through the exercise of due diligence, the alleged factual predicate of his claims. As recounted above, on cross-examination, Terry agreed with defense counsel's representations that his plea agreement created the possibility that the United States could file a Rule 35(b) motion on his behalf in the future. Likewise, Terry agreed with defense counsel's assertion that testifying against petitioner might induce the United States to file a Rule 35(b) motion. Furthermore, on redirect, Terry testified that he would not turn down a chance to reduce his sentence. Thus, petitioner was on notice in November 2003 (i.e., the time of trial) of the

16

potential for the United States to file a Rule 35(b) motion for
Terry.

True, the district court did not hold the Rule 35 hearing
until September 20, 2004. Petitioner could not have accessed the
transcript before this date. Furthermore, it is arguable that
petitioner would have needed some time to discover that the
hearing had taken place. However, petitioner alleges, very
vaguely, that he did not take any steps to access the transcript
until 2014. DE#19 at 6. A ten-year delay in attempting to access
the transcript, needless to say, does not demonstrate due
diligence.

Petitioner essentially concedes that he did not take any
steps to access the transcript until 2014. Id. However,
petitioner contends that he "relied heavily on Terry's sworn
trial testimony . . . that the trial prosecutor [1] never
promised him anything should he come in and testify, [2] never
told him that she was going to help him get time off his sentence
for assisting her and testifying against Petitioner, and that [3]
Terry had proclaimed during his testimony that he was told that
he wasn't eligible for a Rule 35 sentence reduction." Id.

The record contradicts this contention. Regarding point (3),
petitioner takes Terry's testimony that "[he] was told he wasn't
eligible [for a Rule 35 motion]," DE#16-8 at 63, out of context.
Right before making this statement, Terry testified that "[the
Rule 35(b) motion] was never guaranteed." Id. Furthermore,
immediately after making this statement, he testified that he
could not say that he was going to get a "big benefit in federal
court[.]" Id. And, as noted, Terry had already testified that his
plea agreement created the possibility that the United States

17

could file a Rule 35(b) motion in the future. Thus, the record reflects that's Terry's statement that he was not eligible for a Rule 35(b) motion meant that a Rule 35(b) motion was not guaranteed and that the United States had yet to file one. Cf. United States v. McNeese, 547 F.3d 1307, 1308 (11th Cir. 2008) (noting that the government has near-total discretion to file a Rule 35(b) motion).

Moreover, points (2) and (3) do not help petitioner's cause. Petitioner notes Terry's testimony that the state prosecutor did not promise him anything for his testimony. Petitioner's suggestion is that the transcript of the Rule 35(b) hearing contradicts this testimony. This is untrue. As set forth above, supra Part III(B)(3), said transcript lends no support to the idea that the state prosecutor convinced the AUSA to file the Rule 35(b) motion. Rather, the AUSA indicated that she did so because: (1) Terry pleaded guilty early, which caused "a number" of his codefendants to plead guilty; and (2) Terry's testimony helped secure petitioner's conviction in his state prosecution. Both Terry's attorney and the AUSA referred to the state prosecutor only in passing, and simply to note that the state prosecutor debriefed Terry based on information Terry disclosed during his debriefings with the United States.

One final consideration bears mentioning. Petitioner filed his first postconviction motion on July 30, 2007. DE#15-37. Therein, one of his claims was that defense counsel ineffectively failed to investigate Terry. Id. at 22. In support, he alleged that, had counsel adequately investigated Terry, counsel "would then have been able to discover whether . . . Terry's testimony was generated solely for a promise or deal the State made with him concerning criminal charges he himself had pending at the

time of [petitioner's] trial." Id. at 23. True, it is unclear whether petitioner was referring to Terry's subject federal criminal prosecution. Nevertheless, this assertion is the same core assertion on which petitioner bases his Giglio and Brady claims. Thus, petitioner was on inquiry notice of these claims absolutely no later than July 30, 2007. Liberally using the timeline (January 1, 2014 to May 16, 2015) petitioner alleged in his fourth postconviction motion, petitioner would have been able to access the transcript of the Rule 35(b) hearing absolutely no later than December 11, 2008. However, petitioner did not file his fourth postconviction motion until October 15, 2015. And, as recounted above, supra Part II(B), there was no activity in the case from January 3, 2011 to November 12, 2013. See also DE#15-1 at 4. Such "complete inaction . . . is insufficient to establish [due] diligence." See Melson v. Comm'r, Ala. Dep't of Corr., 713 F.3d 1086, 1090 (11th Cir. 2013).

In sum, petitioner failed to file his petition within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Accordingly, § 2244(d)(1)(D) does not apply.

Rather, as explained above, § 2244(d)(1)(A) applies. Consequently, for the reasons stated in Part III(A), supra, petitioner's petition is time-barred.[4]

---

[4] Petitioner is not entitled to equitable tolling. Equitable "[t]olling may be available when some impediment of a variety not covered in [§ 2244(d)(1)(D)] prevents the filing of a federal collateral attack[.]" Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000) (citation omitted). However, petitioner "does not identify any such impediment." Id.; see also Cole, 768 F.3d at 1158-59. Indeed, petitioner has not requested equitable tolling.

## IV. <u>EVIDENTIARY HEARING</u>

"In deciding whether to grant an evidentiary hearing [under § 2254], a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u>; <u>see</u> <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing . . . when his claims are . . . in the face of the record [] wholly incredible." (citation omitted)).

Consonantly, the Eleventh Circuit has held that § 2244 "does not require a hearing on the issue of time-bar or equitable tolling, so the decision as to whether to conduct an evidentiary inquiry is a matter left to the sound discretion of the district court." <u>Drew v. Dep't of Corr.</u>, 297 F.3d 1278, 1292-93 (11th Cir. 2002) (citations omitted). "[A] petitioner seeking an evidentiary hearing must make a proffer to the district court of any evidence that he would seek to introduce at a hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1319 (11th Cir. 2016)(citing cases).

Here, petitioner is not entitled to an evidentiary hearing. The record refutes his factual allegations and precludes the relief he seeks.[5] Furthermore, petitioner has not made the

---

[5] For good measure, petitioner's substantive <u>Giglio</u> and <u>Brady</u> claims fail because he bases them on a false premise, i.e., that there was an agreement for Terry to testify in exchange for Terry to receive Rule 35(b)

required proffer of evidence that he would seek to introduce at
such a hearing. Accordingly, there is no basis for an evidentiary
hearing.


## V. <u>CERTIFICATE OF APPEALABILITY</u>


"The district court must issue or deny a certificate of
appealability when it enters a final order adverse to the
applicant." Rule 11(a), Rules Governing § 2254 Cases. "If the
court issues a certificate, the court must state the specific
issue or issues that satisfy the showing required by 28 U.S.C. §
2253(c)(2)." <u>Id.</u> "If the court denies a certificate, the parties
may not appeal the denial but may seek a certificate from the
court of appeals under Federal Rule of Appellate Procedure 22."
<u>Id.</u> "A timely notice of appeal must be filed even if the district
court issues a certificate of appealability." Rule 11(b), Rules
Governing § 2254 Cases.


"A certificate of appealability may issue . . . only if the
applicant has made a substantial showing of the denial of a
constitutional right." 28 U.S.C. § 2253(c)(2). When a district
court rejects a petitioner's constitutional claims on the merits,
"a petitioner must show that reasonable jurists could debate
whether . . . the petition should have been resolved in a
different manner or that the issues presented were adequate to
deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>,
537 U.S. 322, 336 (2003) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473,
484 (2000)). By contrast, "[w]hen the district court denies a
habeas petition on procedural grounds without reaching the
prisoner's underlying constitutional claim, a [certificate of

relief.

21

appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

Here, in view of the entire record, the undersigned denies a certificate of appealability. If petitioner disagrees, he may so argue in any objections filed with the district court. <u>See</u> Rule 11(a), Rules Governing § 2254 Cases ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.")

## VI. <u>RECOMMENDATIONS</u>

Based on the foregoing, it is recommended that petitioner's habeas petition (DE#1) be **DISMISSED** with prejudice; that no certificate of appealability issue; that final judgment be entered; and that this case be closed.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this <u>21st</u> day of September, 2018.

UNITED STATES MAGISTRATE JUDGE

Copies provided:

Korie Travaro Washington
M16464
Lake Correctional Institution
Inmate Mail/Parcels
19225 US Highway 27
Clermont, FL 34715
PRO SE

Eric John Eves
Office of the Attorney General
Criminal Appeals Division
SunTrust International Center
1 S.E. 3rd Avenue
Suite 900
Miami, FL 33131
(305) 377-5441
Fax: (305) 377-5655
Email: eric.eves@myfloridalegal.com

Noticing 2254 SAG Miami-Dade/Monroe
Email: CrimAppMIA@MyFloridaLegal.com